RUSSELL, J.,
dissenting:
¶ 19. The majority finds that the circuit court properly concluded that Tyrell Williams possessed the mental capacity to knowingly and intelligently waive his Miranda rights and denied his request to suppress his statement. I find that the evidence does not support such a finding; therefore, I must respectfully dissent.
¶ 20. The Mississippi Supreme Court has held that the mere giving of Miranda warnings, no matter how meticulous, no matter how often repeated, does not render admissible any inculpatory statement thereafter given by the accused. Moore v. State of Mississippi, 493 So.2d 1301, 1302 (Miss.1986). The rights of which the accused is Miranda-warned must thereafter be waived — intelligently, knowingly, and voluntarily. Id. Whether there has been an intelligent, knowing, and voluntary waiver is essentially a factual inquiry to be determined by the trial judge from the totality of the circumstances. Id. For a waiver of one’s Miranda rights to be considered valid, the State must prove beyond a reasonable doubt that “the waiver [was] made voluntarily, knowingly[,] and intelligently.” Coverson v. State of Mississippi, 617 So.2d 642, 647 (Miss.1993). In the instant case, the circuit court conducted a pretrial suppression hearing outside the presence of the jury and concluded that the State met its burden by proving the validity of Williams’s waiver beyond a reasonable doubt. I disagree.
¶ 21. Three trained medical professionals hired by the State provided the circuit court with findings after conducting mental evaluations of Williams. In the forensic screening evaluation conducted by Dr. Macvaugh, Dr. Macvaugh reported that Williams had an IQ of 53. He also noted that according to the transcript of Williams’s statement to Officer Jeff Joel, when advised of his Miranda rights, Williams replied “okay” to each one of those rights, and there was no attempt made by Joel to ensure that Williams understood his rights beyond simply stating that he did. Dr. Macvaugh reported that,
the defendant may have demonstrated deficits in his capacity to make a knowing and intelligent waiver of his right to silence and his right to legal counsel at the time of his statement to law enforcement, particularly in light of his severely low IQ and limited reading comprehension skills, as measured by standardized testing. In my opinion, it is unlikely that a defendant with an IQ in the low 50s and reading comprehension skills at the second to third grade level would be capable of making a competent waiver of these rights.
However, Dr. Macvaugh went on to find that he was unable to form any valid conclusions regarding Williams competence to waive or assert his rights, either at the time of his statement or at the time of evaluation.
¶ 22. Both Drs. McMichael and Gugli-ano were unable to form an opinion regarding whether or not Williams had the capacity to knowingly and intelligently waive his Miranda rights at the time of his statement after over two months of forensic service evaluations at the Mississippi *810 State Hospital. Furthermore, the intelligence tests indicated that Williams intellectual functioning was in the extremely low range, which is consistent with mild mental retardation. Both doctors found that Williams had an intellectual disability and recommended that complex legal standards be explained to Williams in simple language.
¶ 23. Williams’s mother, Glandra Williams testified that Williams did not complete high school nor does he have a GED, that he has received mental health care since he was five years old, that she receives a disability check for his mental condition, that he takes medication for his mental health, that he does not drive and does not live alone, and has only worked for a couple of days moving shopper carts at a grocery store. She further testified that Williams is very dependant upon her to explain things to him, and she informed Joel of Williams’s inability to understand prior to his interrogation. In fact, she testified that she would have to explain this particular case to him after they would leave the attorney’s office. On cross, Glandra specifically testified that Williams did not understand his Miranda rights.
¶ 24. The only testimony received by the circuit court to indicate Williams understood the Miranda warning came from Joel, who administered the warning. Joel provided testimony that his general practice during suspect interviews is to inform the suspect of the charges against them, go over their rights with them, instruct them to ask questions if they do not understand, start the interview process, and then read their rights to them again. Joel went on to testify that he believed Williams understood completely what was going on.
¶ 25. The majority is correct that the three state physicians determined Williams to be competent to stand trial, but that is not the issue at hand. None of medical experts provided evidence that Williams was able to make a voluntary, knowing, and intelligent waiver of his Miranda rights on August 29, 2009. I respectfully disagree with the majority’s conclusion that the evidence presented supports a finding beyond a reasonable doubt that Williams knowingly and intelligently waived his Miranda rights.
¶ 26. I find that the circuit court’s finding was contrary to the overwhelming weight of the evidence and constitutes manifest error. For these reasons, I dissent.